UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MACEO DOWNEY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. G-10-74 |
| | § | |
| MIKE BARRY; aka UNKNOWN OFFICER GALVESTON COUNTY JAIL, | § § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

The plaintiff, Maceo Downey (# 1683859), is an inmate at the Stiles Unit. Downey has filed a complaint under 42 U.S.C. § 1983, alleging a Fourth Amendment violation of his civil rights in connection with his arrest. The defendant, Officer Mike Barry, has moved for summary judgment. (Doc. No. 37). Downey has filed a response. (Doc. No. 44). After considering all of the pleadings, the motion, and the applicable law, the Court grants the defendant's motion for summary judgment and dismisses this case for reasons set forth below.

### I. BACKGROUND

#### A. Plaintiff's Allegations[1]

Downey alleges that on December 12, 2009, he was picked up by Brandon Ash and Gary Barr. They drove to the Northern Pines apartments in Dickinson, Texas, and Brandon jumped out of the vehicle and went into the apartments. Downey exited the vehicle to smoke a cigarette and was "jumped" by two unidentified men who ordered him to put his hands on the car. Downey put his hands on the car, then took them down to pull up his baggy pants. The defendant put Downey's hands back on the vehicle, then Downey realized he "had a little weed on him" so

---

[1] As stated in the original complaint (Doc. No. 1) and motion for summary judgment, Exhibit 1-CD - Downey's statement to the police. (Doc. No. 37).

he "twisted, broke and ran." Suddenly, a bullet hit him in the foot from three feet away. Downey kept running and threw his weed and some of his clothes in the bushes. He states that he heard that a weapon had been recovered but that it was not his. Downey contends that "the use of deadly force to prevent the escape of all felony suspects, whatever the circumstance, is constitutionally unreasonable." (Doc. No. 44). Downey seeks compensatory damages for the use of excessive force and for his pain and suffering.

    **B.**    **The Summary Judgment Evidence**

In support of the motion for summary judgment, the defendant has filed the following evidence:

1. Affidavit of Officer Michael T. Barry.

2. Affidavit of Deputy Perry Larvin - Relevant portions of the Major Use of Force Report # MA-03593-07-09.

3. Records of the Office of Professional Standard regarding the investigation of Maceo Downey.

4. CD recording of police interview with Maceo Downey.

5. CD recording of interview with Deputy Lina.

In his affidavit and "reporting officer narrative" (Doc. No. 37), Defendant Barry states that on December 12, 2009, he and other officers of the Galveston County Sheriff's Office Special Crimes Unit were conducting an undercover operation involving drug trafficking in Dickinson, Texas. One undercover deputy was working the illegal narcotic transaction with the suspects inside the Northern Pines apartment building while Barry and other deputies were positioned across the street monitoring the transaction via an audio recording device. Barry and the other deputies saw an SUV pull into the parking lot of the apartment complex and park. A short time later, Barry and the other deputies received a prearranged verbal signal from the

undercover officer inside the apartment that the illegal narcotic transaction was complete. Barry then moved to secure the SUV while the other deputies left to secure the apartment. Upon driving onto the property, Barry observed a black male wearing a grey-colored hoodie, dark-colored jeans and white tennis shoes standing at the passenger-side rear door of the SUV. Because he had been monitoring the parking lot and knew that no one had approached the SUV, Barry concluded that the black male, later identified as Maceo Downey, had arrived with the drug seller and was possibly acting in concert with the seller and needed to be secured. Barry therefore exited his vehicle. He identified himself as an officer and told Downey to move to the back of the SUV and put his hands on the back of the vehicle. Downey complied, hesitantly, then moved his right hand down toward his pants. Barry told him to keep his hands on the vehicle and Downey did so initially, but then again started to move his right hand toward his belt. Barry pushed Downey against the vehicle with his left hand and again told him to put his hands on the back of the vehicle. Downey complied, then pushed back slightly and twisted his body to the left as Barry was reaching for his handcuffs. Downey then bolted and began to run through the parking lot. Barry ordered Downey to halt and reached for his weapon. Downey looked over his left shoulder and moved his right arm toward his belt, which lead Barry to believe that Downey was reaching for a weapon. Because of a perceived threat to his safety, Barry discharged his firearm. Barry heard Downey say "ouch" and swear, and Downey kept running - across the street past a building and through a field. Barry did not pursue Downey because he knew that he couldn't catch him. He secured the area and determined that there was another individual in the SUV who needed to be secured. Barry received word later that Downey had been arrested a few blocks away and was wounded in the foot. Barry summarized his involvement as follows:

> I discharged my weapon because it appeared to me that Downey was reaching for a weapon and would injure me. I knew Downey had arrived in the SUV with the dealer who had brought cocaine to the apartment and who was arrested by the entry team in the apartment. I felt he was part of a team and he was probably acting as the lookout for the deal. After I placed him against the vehicle he had moved his hand down toward his waist more than once; I was concerned for my safety at that point and was attempting to get my handcuffs out so as to secure that possible threat to myself. He had pushed back against me to flee although he knew I was an officer and had told him to keep his hands on the vehicle. Next, as I saw him turn to his left while his hand was reaching down toward his waist I felt he was reaching for a weapon to use on me so I discharged my firearm to deal with that threat to my safety.

Because the incident involved a shooting, an investigation was conducted by Lt. Perry Larvin and Sgt. Josette Birdow of the Sheriff's Office of Professional Standards (Internal Affairs). In his affidavit (Exhibit 1), Larvin states that the incident on December 12, 2009, arose out of an undercover operation involving an undercover officer who was arranging to purchase an ounce of cocaine from Brandon Ash. Downey attempted to escape and was arrested a few blocks away. Because the incident occurred at night, a search of the field that he fled through was conducted the next day and a handgun was found inside a sock. There were no fingerprints on the weapon but Downey's DNA was found on the sock holding the gun. (See Doc. No. 37, Exhibit 1, Texas Dept. of Public Safety Supplemental Serology/DNA Report). As a result of the findings, Larvin concluded that Downey was in possession of a handgun concealed within a sock when Downey fled from Barry.

Because Downey complained that he had been shot within three feet of Barry, Larvin requested that the investigating officers for the District Attorney's Office re-create the shooting in a controlled environment to determine Downey's distance from Barry when Downey was struck in the foot by Barry's bullet. Testing revealed that Downey was 18 feet away from Barry if Barry fired from the hip, and 31 feet away if Barry fired his weapon at chest level. Deputy

Lina, who was a witness to the shooting, stated that Barry was holding his weapon at chest level when he fired at Downey. (Doc. No. 37, Exhibit 1).

The defendant contends that he is entitled to summary judgment because the evidence reflects that a reasonable use of force was used that did not violate the Fourth Amendment, and that he is entitled to qualified immunity.

## II.   STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact." *Lynch Props. Inc. v. Potomac Ins. Co.,* 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322-325)). Once the movant caries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. See *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). "[T]he substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "A dispute regarding a

material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005)(quoting *Anderson*, 477 U.S. at 251-252).

If the moving party pleads in good faith that it is entitled to absolute or qualified immunity, "the burden shifts to the plaintiff to rebut it." *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003) (internal citations omitted). Thus, "[t]he burden is on a plaintiff to overcome a defendant's defense of qualified immunity. *Burnes-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994).

### III.   ANALYSIS & DISCUSSION

#### A.   The Constitutional Violation Analysis

42 U.S.C. § 1983 "imposes liability upon 'every person' who, under color of state law or custom, 'subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Owen v. City of Independence, Missouri,* 445 U.S. 622, 635 (1980); *see also Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights conferred elsewhere.'" *Albright v. Oliver*, 510 U.S. 266, 271 91994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)). In this case, the plaintiff argues that he was deprived of his Fourth Amendment right "to be secure . . . against unreasonable seizures." *Graham v. Connor*, 490 U.S. 386, 394-395 (1989) ("[A]ll claims that law enforcement officers have used excessive force . . . in the course

of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . .").

Applying *Graham*, the Fifth Circuit has held that, to prevail on a § 1983 excessive force claim, a plaintiff must show: "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999) (internal citations omitted). An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others. *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). This case clearly involves an injury that resulted directly and only from the use of force. The question that remains is whether the force used was clearly excessive and objectively unreasonable. *See Reese v. Anderson*, 926 F.2d 494, 500 (5th Cir. 1991).

Determining whether the use of force is reasonable under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). Even though the Court must consider the evidence in the light most favorable to plaintiffs, the reasonableness of the use of force is to be judged "from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Graham*, 490 at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)); *see also Ballard v. Burton*, 444 F.3d 391, 402-03 (5th Cir. 2006). The Court must allow for the fact that "police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation. *Graham*, 490 U.S. at 397. The

officers' underlying intent or motivation is irrelevant: "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Id.* (internal quotations and citations omitted); *see also Pierce v. Smith*, 117 F.3d 866, 871 n.5 (5th Cir. 1997).

Where an officer reasonably believes that a suspect poses an immediate threat to himself or others, the use of deadly force does not violate the Fourth Amendment. *See e.g., Fraire v. City of Arlington*, 957 F.2d 1268, 1280 (5th Cir. 1992). The question of whether Officer Barry's use of force was reasonable turns on whether the events occurred in the way the defendant describes. After careful consideration of the record and arguments presented by the parties, the Court concludes that the plaintiff has failed to provide evidence sufficient to establish a genuine issue of material fact as to how the events occurred.

Downey argues that Barry had no reason to believe he posed any threat of serious physical harm to him or anyone else. It is undisputed that Downey arrived at the scene of the incident with Brandon Ash, the drug vendor around whom the entire undercover incident revolved. Downey claims that Barry had no reason to approach him, no reason to order that his hands be placed against the car, no reason to chase him when he fled the scene, no reason to suspect that he might be armed and attempting to harm him, and no reason to fire his weapon at him. Downey fails, however, to identify any contradictions in the testimony from Officer Barry or any of the other officers that would suggest that the events did not occur as Officer Barry claims. DNA evidence disproved Downey's claim that he was unarmed. Investigative evidence disproved Downey's claim that Officer Barry fired at him from 3 feet away; rather, evidence revealed that Officer Barry fired his weapon at Downey from 30 feet away, more than enough time for Barry to perceive if Downey was a threat. Despite repeated orders to keep his hands on

the vehicle, Downey persisted in moving his hands to his belt area before fleeing from Barry. While being chased by Barry and told to halt, Downey instead continued to run and moved his hand to his belt area while looking over his shoulder at Barry. Under these circumstances and given the uncontroverted facts and evidence presented in the summary judgment motion, it was not remotely unreasonable for Officer Barry to fear imminent and serious harm. An officer could have reasonably believed that Downey posed a threat of serious physical harm to himself or other officers. *See Saucier v. Katz*, 533 U.S. 194, 195 (2001) (Even if mistaken, if an officer reasonably believed that a suspect was likely to fight back . . .the officer would be justified in using more force than in fact was needed.). As long as Downey's actions gave Officer Barry cause to believe there was a threat of serious physical harm, the use of deadly force does not constitute a constitutional violation. *See Fraire*, 957 F.2d at 1275-76. Although not relevant to this analysis, it was determined that Downey was, as Officer Barry believed, carrying a deadly weapon. Officer Barry's use of deadly force did not constitute a constitutional violation.

### B. Qualified Immunity Analysis

Because the Court finds that Officer Barry's actions did not violate a constitutional right, it need not determine whether Officer Barry was entitled to qualified immunity. *Saucier*, 533 U.S. at 201 ("if no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). Even if Officer Barry's actions could be construed as constituting a constitutional violation, the Court finds that he would have been entitled to qualified immunity.

After finding that a constitutional violation occurred, "the next, sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201. The Court must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Id*.

A right is clearly established if its 'contours . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Saucier*, 533 U.S. at 202; *see also Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) ("[A]ny purported harm must stem from rights clearly established under law at the time of the incident, and the contours of that right must be sufficiently clear such that a reasonable officer would understand that his actions were violative of the right at issue."). The dispositive inquiry, is, therefore, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202. If Officer Barry "reasonably but mistakenly" thought the use of deadly force was legal under the circumstances, he would be entitled to immunity. *Saucier*, 533 U.S. at 205 ("An officer might correctly perceive all the facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense."); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier*, 533 U.S. at 202 (citing *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).

Under the circumstances of this case, it would not necessarily have been clear to a reasonable officer that his conduct was unlawful in this situation. To find that "no reasonable officer could have believed" that Officer Barry's use of force was consistent with the Constitution would require a very different showing from that which the plaintiff has made. *Mendenhall*, 213 F.3d at 231; *see also Malley*, 475 U.S. at 341 (if "officers of reasonable

competence could disagree" as to whether a use of force was reasonable under the circumstances, "immunity should be recognized."); *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). Given the fact that Downey was with Brandon Ash, the subject of the undercover drug trafficking operation, that he was standing outside of the car in which Brandon Ash arrived, that he refused to keep his hands on the SUV as ordered, that he ran from Barry and twice looked back at Barry and reached down to his waist as if reaching for a weapon, Officer Barry's fear that he faced imminent harm and that his life was at risk was reasonable in light of previously cited cases. Thus, even if Officer Barry's actions constituted an unconstitutional use of excessive force, he would be entitled to summary judgment on grounds of qualified immunity.

## IV. CONCLUSION

The Court finds that Officer Barry's use of force was not unreasonable under the circumstances and did not constitute a constitutional violation. Even if Officer Barry's use of force could be construed as a constitutional violation, he would be entitled to qualified immunity. Therefore, Defendant's motion for summary judgment is **GRANTED** and this case is **DISMISSED.**

All pending motions, if any, are **DENIED.**

It is so **ORDERED.**

SIGNED at Houston, Texas this 15th day of March, 2012.

_____
Kenneth M. Hoyt
United States District Judge